# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAINE G. HARRINGTON III,<br><br>         Plaintiff,<br><br>v.<br><br>EQUITY ASSET & PROPERTY MANAGEMENT, INC. d/b/a EQUITY RESIDENCE, LLC,<br><br>         Defendant. | Case No.: 3:18-cv-00216-GPC-NLS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR THIRD DEFAULT JUDGMENT**<br><br>**[ECF No. 27]** |

Before the Court is the motion for Third Default Judgment filed by Plaintiff Blaine G. Harrington III. ECF No. 27. Defendant Equity Asset & Property Management, Inc. d/b/a Equity Residences LLC has not answered Plaintiff's complaint or otherwise appeared in this matter. For the reasons discussed below the Court **GRANTS** Harrington's motion.

## PROCEDURAL BACKGROUND

On January 30, 2018, Harrington filed his Complaint in this Court. ECF No. 1. According to the Return of Service filed on February 8, 2018, the summons and complaint were served on "Jason Smith as Manager" at Equity's address of 1220 Rosecrans Street, #822, San Diego, CA, 92016 ("Rosecrans Street address"). ECF No. 4.

1

On March 13, 2018, Harrington moved for entry of default against Equity, contending that Equity was served but did not answer or respond to the Complaint within the allowed time to do so. ECF No. 5. On March 14, 2018, the Clerk entered a default against Equity. ECF No. 6. On August 14, 2018, Harrington moved for a default judgment against Equity. ECF No. 9. On October 15, 2018, the Court denied Harrington's first motion for default judgment, citing a number of deficiencies in Harrington's service of the summons and complaint on Equity. ECF No. 12.

Harrington served the summons and complaint again on Jason Smith at the Rosecrans Street address on November 28, 2018. ECF No. 21-3 ¶ 3. That same day, Harrington also mailed the summons, complaint, motion for default, motion for final default, and the order denying final default to the same Rosecrans Street address. *Id.* On January 4, 2019, Harrington requested an entry of default against Equity. ECF No. 18. The Clerk entered a default three days later. ECF No. 19. On August 21, 2019, Harrington filed its second motion for default judgment against Equity. ECF No. 21. On October 24, 2019, the Court denied Harrington's motion with leave to amend within the next 30 days. ECF No. 26. On November 25, 2019, Plaintiff filed a motion for third default judgment. ECF No. 27.

**FACTUAL BACKGROUND**

According to the Complaint, Harrington is a "travel/location photographer" based in Denver, Colorado. ECF No. 1 ¶ 2. In 2011, Harrington created the photograph that gives rise to this litigation. *Id.* ¶ 10. This photograph depicts a beach scene with ocean water, sand, and palm trees and is entitled "20110427_florida_4138.jpg" ("Copyrighted Work"). *Id.* ¶ 10. A person appears to be laying on the beach in the photo. *Id.* Harrington registered the photograph with the Register of Copyrights on August 29, 2011. *Id.* ¶ 11.

Equity is a luxury real estate investment company. *Id.* ¶ 3. In its motion for third default judgment, Harrington alleges that Equity is a Nevada company with its main office in San Diego, California. ECF No. 27-1 at 15. Harrington asserts that Equity copied the Copyrighted Work without Harrington's permission, and then distributed it on the internet to promote Equity's business. ECF No. 1 ¶¶ 15, 16.

## DISCUSSION

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After default is properly entered, a party seeking relief other than for a sum certain must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b). "[D]efault judgments are ordinarily disfavored." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). "The decision to grant or deny default judgment is within the discretion of the district court." *Xifin, Inc. v. Sunshine Pathways, LLC*, No. 16-CV-01218-GPC-DHB, 2016 WL 5930313, at *2 (S.D. Cal. Oct. 12, 2016) (citing *Eitel*, 782 F.2d at 1471). "In determining whether a Plaintiff is entitled to default judgment, the Court must first assess the adequacy of service of process on the party against whom default is requested." *Hupp v. San Diego Cty. Dist. Atty.*, No. 12-CV-492-IEG RBB, 2012 WL 2887229, at *4 (S.D. Cal. July 12, 2012) (citation and quotation marks omitted).

In the order denying Plaintiff's second motion for default judgment, the Court held that the existing record was insufficient to exercise personal jurisdiction – both general and specific personal jurisdiction – over Equity. ECF No. 26.

## I. Jurisdiction

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, the Court may enter a judgment of default upon application by the plaintiff and after an entry of default. *See* Fed. R. Civ. P. 55(b)(2). Before assessing the merits of a default judgment, however, a court must confirm that it has subject matter

jurisdiction over the case and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Because Plaintiff is asserting a violation of the Copyright Act, 17 U.S.C. § 501, the Court has federal question jurisdiction over that claim by virtue of 28 U.S.C. §§ 1331, 1338(a). Accordingly, the Court has subject matter jurisdiction over the case. Next, the Court turns to the issue of personal jurisdiction.

## II. Personal Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *Id*. The Court may dismiss an action *sua sponte* for lack of personal jurisdiction in order "[t]o avoid entering a default judgment that can later be successfully attacked as void." *Id.* Even when the Court has jurisdiction to enter judgment, the decision whether to enter default judgment is within the Court's discretion. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

### A. General Personal Jurisdiction

Plaintiff corrected his initial characterization of Equity as a California corporation in the Complaint, *see* ECF No. 1 ¶ 9, now admitting that Equity is a Nevada company with its main office in San Diego, California. ECF No. 27-1 at 10 n.1. In his third motion for default judgment, Plaintiff argues that Equity has its principal place of business in San Diego, California and is therefore subject to this Court's exercise of general personal jurisdiction. In support of this, Plaintiff alleges that Equity has its main office in California, employees in California, a California phone number with a San Diego area code listed on its website, and a California address listed on its Statement of Information filed with the California Secretary of State. ECF No. 27-1 at 13. Plaintiff additionally alleges that Equity is registered with the State of California Bureau of Real Estate. *Id.*

"With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citations omitted). "*Daimler* ma[de] clear the demanding nature of the standard for general jurisdiction over a corporation," and that courts are prohibited from exercising general jurisdiction solely on the basis of a corporation's "substantial, continuous, and systematic course of business" in a state. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (citing *Daimler*, 571 U.S. at 139). In other words, "[g]eneral jurisdiction does not exist simply because of the magnitude of the defendant's in-state contacts." Wright & Miller, 4 Fed. Prac. & Proc. Civ. § 1067.5 (4th ed.) (citations omitted). "General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Daimler*, 571 U.S. at 139 n.20. If the magnitude of a corporation's business activities in the forum state substantially exceeds the magnitude of the corporation's activities in other places, general jurisdiction may be appropriate in the forum state. *See id*. When there has been no evidentiary hearing, a plaintiff need only make out a *prima facie* showing of jurisdictional facts. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010); *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). "It is only if the court takes evidence on the issue or rules on the personal jurisdiction question in the context of a trial that a heightened, preponderance of the evidence standard applies." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). Absent such a showing, however, general jurisdiction will be improper. *See, e.g.*, *Martinez*, 764 F.3d at 1070 (finding general jurisdiction lacking where corporation was not licensed to do business in California and had no office, staff, or physical presence in California, and therefore its California contacts were minor compared to its other worldwide contacts).

In its prior order denying Plaintiff's motion for second default judgment, the Court noted the need for a comparative analysis. ECF No. 26 at 5. In his motion for third

default judgment, Harrington does not provide a comparative analysis but alleges that Equity's principal place of business is in San Diego, California and "does not appear to be operating from anywhere else but California." ECF 27-1 at 13.

Plaintiff has not cited cases that define the requirements for a "principal place of business" in the context of general personal jurisdiction. At least in the context of diversity of citizenship, the Supreme Court has referred to the corporation's "principal place of business" as its "nerve center, usually its main headquarters," where "a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

In *Delphix*, the Ninth Circuit permitted the exercise of general jurisdiction over Embarcadero, a Delaware corporation, despite Embarcadero's claims that it had moved its principal place of business from California to Texas. *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 506 (9th Cir. 2018). The Ninth Circuit found that the plaintiff had presented sufficiently extensive evidence showing that Embarcadero's headquarters were still in California. Specifically, the plaintiff cited the following facts to demonstrate that Embarcadero's principal place of business remained in California: (1) Embarcadero continued to promote itself on social media as having a principal place of business in California; (2) Embarcadero had denied that its principal place of business was in Texas in an answer to a complaint filed in the Eastern District of Texas; (3) Embarcadero continued to represent that it has a California address to the Trademark Office; (4) Embarcadero had failed to substantiate in its pleadings and discovery responses that most of its employees were located in Texas at the time that the lawsuit was filed; and (5) Embarcadero relied on California law and its California-based offices in its contracts and policies addressed to consumers. See *Delphix Corp. v. Embarcadero Techs., Inc.*, 2016 WL 4474631, at *6 (N.D. Cal. Aug. 25, 2016), *aff'd in part, rev'd in part*, 749 F. App'x 502 (9th Cir. 2018).

Here, Harrington alleges that Equity has listed a San Diego, California phone number as the sole contact phone number on its website and lists "La Jolla" as its location on LinkedIn webpage; additionally, all of Equity's employees appear to live in the greater San Diego area. ECF No. 27-1 at 11. Harrington also presents evidence that Defendant has real estate licenses with the State of California that list the Rosecrans Street address as its "main office" address. ECF Nos. 27-8, 27-9. And finally, Equity cites California law on privacy rights in its privacy policy listed on its website. ECF No. 27-16 at 8.

In sum, Harrington has presented substantial evidence corroborating its claim that Equity's principal place of business is in fact in San Diego, California. The Court is mindful that any analysis of Equity's location and business conduct is impeded by Equity's failure to appear. While the *Delphix* plaintiff was able to present a more fulsome record as to the defendant's location and business model; here, Harrington has ultimately gathered sufficient evidence about an absent defendant. While there is still a level of uncertainty with respect to Equity's ties to Nevada, the Court will afford a degree of flexibility to Harrington on the question of jurisdiction in Equity's absence. *Mwani*, 417 F.3d at 7 ("[T]he absence of the defendants counsels greater flexibility toward the plaintiffs because it impedes their ability to obtain jurisdictional discovery."). Accordingly, the Court finds that Harrington has made a prima facie case showing that Equity's principal place of business is in California and that this Court has general personal jurisdiction over Equity.[1]

---

[1] The Court notes that the "persisting rule" is that a defendant who makes no appearance remains free to challenge a default judgment for want of personal jurisdiction. *See* Wright & Miller, 18A Fed. Prac. & Proc. Juris. § 4430 (3d ed.) (citing *Baldwin v. Iowa State Traveling Men's Assn.,* 283 U.S. 522, 525 (1931)). Under Rule 55(c), a defendant may challenge a default judgment rendered against it on the basis of lack of personal jurisdiction in accordance with the provisions of Rule 60(b). *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on

## B. Specific Personal Jurisdiction

Since the Court has already found general personal jurisdiction, the question of specific personal jurisdiction is rendered moot. However, the Court will nevertheless address this analysis.

The Ninth Circuit applies the following three-prong test for determining specific jurisdiction over a non-resident defendant:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*See Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1227 (9th Cir. 2011) (citing *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004)).

The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment, and the Ninth Circuit has explained that in cases involving tortious conduct, the purposeful direction analysis is most often employed. *Id.* In tort cases, the Ninth Circuit has inquired whether a defendant purposefully directs her activities at the forum state by applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. *Id.* at 1228. The "effects" test, which is based on the Supreme Court's

---

jurisdictional grounds"); *see also Ruddies v. Auburn Spark Plug Co*., 261 F. Supp. 648 (S.D. N.Y. 1966) (default judgment was void for lack of personal jurisdiction over defendant and defendant was granted relief four years after the judgment had been entered).

8

3:18-cv-00216-GPC-NLS

decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

### 1. Intentional Act

In its prior order, the Court held that plaintiff had successfully proved the first prong of the *Calder* test, but failed to prove the latter two. ECF 26 at 6. The Court incorporates the analysis of the first prong from its prior order.

### 2. Expressly Aimed at the Forum State

On the second prong, Harrington argues that Equity has expressly aimed its intentional act at the forum state. The Ninth Circuit has held that "operating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient" to confer personal jurisdiction." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011). In determining whether the defendant has done "something more," the Ninth Circuit has considered the interactivity of the defendant's website, the geographic scope of the defendant's commercial ambitions, and whether the defendant "individually targeted" a plaintiff known to be a forum resident. *Id.*

Plaintiff argues first that Equity's website is not a "passive website" since investors are able to access private information through its website and that Equity specifically targets California residents with its website. In support of this, Plaintiff points to Equity's license to sell real estate in California and Equity's offerings of California real estate. ECF No. 27-1 at 14.

However, in *Mavrix,* the Ninth Circuit ultimately found "most salient the fact that [the defendant] used [plaintiff's] copyrighted photos as part of its exploitation of the California market for its own commercial gain" since it sold advertising space on its

9

3:18-cv-00216-GPC-NLS

website to companies that directed their advertisements towards Californians. *Mavrix*, 647 F.3d at 1225. The *Mavrix* court held that based on the website's subject matter, which was centered on celebrity and entertainment industries, that the defendant "anticipated, desired, and achieved a substantial California viewer base." Here, Equity did not use Harrington's photo in order to sell California-based real estate, but instead used the photo in order to advertise investment opportunities for real estate in Florida and Hawaii. ECF No. 27-21 at 7. Plaintiff notes that in this "brochure," Equity stated that it offered investment to "investors on the 'east and west' coast"; however, this only further bolsters the conclusion that the "brochure" in question was not specifically directed at a California audience, but instead at a nationwide audience. ECF No. 27-1 at 14. Harrington additionally asserts that the only residence fund open for investors on Defendant's website is the Mammoth Residence Fund, which consists of two residences in Mammoth Lakes, California. ECF No. 27-1 at 16. However, this argument is unavailing since Equity's website also offers investment opportunities in its "Equity Platinum Fund" which includes properties in Costa Rica, Hawaii, the Dominican Republic, Italy, the U.S. Virgin Islands, Turks and Caicos, and Florida.

Finally, it is clear that Equity did not "individually target" any plaintiff known to be a forum resident since Harrington is a resident of Denver, Colorado. *Cf. Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir. 2010) (defendant knew that the plaintiff was a resident of forum in question – *i.e.*, Northern California – when it infringed plaintiff's copyrighted material).

### 3. Foreseeable Harm

On the third prong, Harrington argues that Equity has destroyed the photograph's market value by its unauthorized use, and that Equity knew that the harm would likely be suffered in California since it features a Northern California resident on its YouTube channel and includes discussion of California privacy law in its website's privacy

10

policies. This evidence falls short of the evidence presented by the *Mavrix* plaintiff, which showed that the a substantial part of the photos' value was based on the fact that a significant number of Californians would have bought celebrity gossip magazines in order to see the *Mavrix* plaintiff's photograph. *See Mavrix*, 647 F.3d at 1232 (9th Cir. 2011). Here, there is insufficient evidence to establish that Equity's use of the Copyrighted Work, which depicts a beach in Florida, shows that a jurisdictionally significant amount of economic harm took place in California.

Given Harrington's failure to meet the requisite elements of the *Calder* test, the Court finds there is no specific personal jurisdiction over Equity.

## III. *Eitel* Factors

The Ninth Circuit looks to seven factors to assist the court in determining whether default judgment is appropriate. The seven factors are:

> (1) the possibility of prejudice to the plaintiff;
> (2) the merits of the plaintiff's substantive claim;
> (3) the sufficiency of the complaint;
> (4) the sum of money at stake in the action;
> (5) the possibility of a dispute concerning material facts;
> (6) whether the default was due to excusable neglect; and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon default, the factual allegations in the complaint are taken as true, except those related to the amount of damages. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see* Fed. R. Civ. P. 8(b)(6). Allegations of damages must be proven. *Geddes*, 559 F.2d at 560. The decision to grant or deny default judgment is within the discretion of the district court. *Eitel*, 782 F.2d at 1471. Here, the *Eitel* factors weigh in favor of entering default judgment against Equity.

### A. Prejudice to Plaintiff

The first *Eitel* factor considers whether a party will suffer prejudice if a default judgment is not entered. Potential prejudice to Plaintiff favors granting a default judgment. *PepsiCo, Inc. v. Calif. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Harrington argues that he will suffer prejudice if a default judgment is not entered since he has will have no other recourse to obtain compensation for Equity's use of the Copyrighted Work and will otherwise be unable to assure that Equity will not reproduce, display or continue to display the Copyrighted Worked in the future. The Court agrees that this factor weighs in favor of granting Plaintiff's motion.

### B. Substantive Merits and Sufficiency of the Complaint

The Ninth Circuit has suggested that the second and third *Eitel* factors – *i.e.*, the substantive merits and sufficiency of the complaint – require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kloepping*, 1996 WL 75314, at *2 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978)). Thus, in order to weigh these two factors the Court must turn to Plaintiff's complaint, which pleads one count of copyright infringement against Equity in violation of 17 U.S.C. § 501.

In order to state a claim for copyright infringement, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). Here, Harrington has stated a claim for copyright infringement. Harrington registered the Copyrighted Work with the Register of Copyrights and owns all exclusive rights to the Copyrighted Work. ECF No. 1 ¶¶ 11-12. Equity made unauthorized use of Plaintiff's copyrighted work on its website. *Id.* ¶ 15. This factor weighs in favor of granting Plaintiff's motion.

### C. Sum of Money at Stake

The fourth factor balances the sum of money at stake "in relation to the seriousness of the action." *Lehman Bros. Holdings Inc. v. Bayporte Enters., Inc.*, 2011 WL 6141079, at *7 (N.D. Cal. Oct. 7, 2011) (internal citations and quotations omitted). The amount at stake must not be disproportionate to the harm alleged. *Id.*

Here, Plaintiff requests that Defendant be required to pay Plaintiff actual damages or statutory damages as provided by 17 U.S.C. § 504. Plaintiff also seeks a permanent injunction prohibiting Equity from further infringement of the Copyrighted Work. Specifically, Plaintiff seeks $23,661.72 in attorneys' fees and costs plus interest, in addition to either actual damages of $200,000 or, in the alternative, statutory damages of $150,000.

Plaintiff has demonstrated actual damages of at least $10,000 in lost potential licensing fees for a one-year term. Declaration of Blaine G. Harrington ("Harrington Decl."), ECF 27-22 ¶ 10. Plaintiff seeks to add a scarcity multiplier of five, which would bring the damages to $50,000, and also seeks to multiply the damages by the number of years that Equity's made infringing use of the Copyrighted Work. *Id.* ¶ 12. Plaintiff seeks to multiply the sum by four to account for each year of Equity's infringing use, but the Court notes that the correct number is three, since Plaintiff has alleged that Equity used Harrington's photo from at least 2016 through 2018.[2]

Alternatively, Plaintiff seeks statutory damages of $150,000 due to the "willful nature" of Equity's infringement based on Equity's failure to appear and properly defend itself against Plaintiff's claims. ECF No. 27-1 at 22.

---

[2] Plaintiff identified Equity's infringement on April 6, 2016. ECF No. 1-4 at 3. At some point between January 2, 2018 and August 11, 2018, Equity removed the Copyrighted Work from its website. Declaration of Jonah A. Grossbardt ("Grossbardt Decl.") ¶ 22

Plaintiff's claims for damages are discussed further below; however, given Equity's failure to appear and address the infringement, the Court finds that the even damages for the licensing fee per year of use (*i.e.*, $30,000) plus the attorneys' fees and interest tips this factor in favor of entering default judgment.

### D. Possibility of Dispute

The fifth *Eitel* factor requires the Court to determine whether it is likely that there would be a dispute of material facts. The Court finds that such a dispute is unlikely. Plaintiff has submitted an exhibit with the Complaint showing that Equity used Plaintiff's Copyrighted Work and superimposed the words "Equity Residences" on to the image in the bottom right corner. ECF No. 1-4 at 3, 7. This factor weighs in favor of entry of default judgment.

### E. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether Defendant's failure to litigate is due to excusable neglect. The Court denied Plaintiff's first motion for default judgment on August 14, 2018 due to concerns that Plaintiff had failed to properly serve Equity with the summons and the Complaint. ECF No. 12. Plaintiff thereafter sufficiently addressed each of the Court's concerns with service. ECF No. 21-1 at 12-14. As such, there is no remaining indication that Equity's default was due to excusable neglect. This factor also weighs in favor of entry of default judgment.

### F. Policy of Deciding on the Merits

The seventh *Eitel* factor encourages courts to decide cases on their merits "whenever reasonably possible." *Eitel,* 782 F.2d at 1472. This factor tends to weigh against granting a motion for default judgment. However, in this case, Equity's choice not to appear to defend itself renders a decision on the merits "impractical, if not impossible." *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal.

2002). Since Equity has failed to appear or respond in this matter, a decision on the merits is impossible. Thus, this factor favors entry of default judgment.

## IV. Relief Sought

Once a court concludes that default judgment is appropriate, it must determine what damages or other relief is warranted. Plaintiff carries the burden of showing it is entitled to the requested relief. *See Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). As stated above, Plaintiff seeks $23,661.72 in attorneys' fees and costs plus interest, in addition to either actual damages of $200,000 or, in the alternative, statutory damages of $150,000.

### A. Permanent Injunctive Relief

Plaintiff is entitled to permanent injunctive relief. Section 502(a) of the Copyright Act specifically authorizes the court to grant injunctive relief on such terms as it may deem reasonable to prevent or restrain infringement of a copyright. Plaintiffs must meet their burden with respect to the following four-part test: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006). "[T]he decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts." *Id.*at 1841.

Here, Plaintiff alleges that Equity is causing irreparable harm and that Equity's conduct demonstrates that it may again willfully infringe on the Copyrighted Work unless the Court enjoins Equity from doing so. ECF No. 27-1 at 25. Copyright infringement is presumed to give rise to irreparable injury. *A & M Records, Inc. v. Napster, Inc.,* 114 F.Supp.2d 896, 925 (N.D. Cal. 2001) (citing *Micro Star v. Formgen Inc.,* 154 F.3d 1107,

15

1109 (9th Cir. 1998)). Accordingly, when seeking a permanent injunction in copyright cases, irreparable harm is presumed on a showing of success on the merits. *Micro Star,* 154 F.3d at 1109. Consequently, Plaintiffs in this case need not show irreparable harm, as the default against Defendants satisfies the element of success on the merits.

The Court finds that such injunctive relief to protect Plaintiff's Copyrighted Work is appropriate. Despite the fact that Equity is aware of Plaintiff's claims and has removed the Copyrighted Work from its website, Equity has still chosen to ignore this lawsuit, suggesting that Equity does not appreciate the gravity of such infringement.

### B. Actual Damages

Plaintiff has demonstrated actual damages of at least $10,000 in lost potential licensing fees for a one-year term. ECF 27-22 ¶ 10. Plaintiff seeks to add a scarcity multiplier of five, which would bring up the damages to $50,000, and additionally seeks to multiply this sum for each year of Equity's infringing use. *Id.* ¶ 12. Plaintiff seeks to multiply the sum by four to account for each year of use, but the correct multiplier is three, since Plaintiff has only presented exhibits showing that Equity made use of the Copyrighted Work from 2016 through 2018.[3]

In sum, Plaintiff has demonstrated actual damages of $30,000 in lost potential licensing fees for the three years of Equity's infringing use of the Copyrighted Work.

### 1. Scarcity Multiplier

Plaintiff seeks to add a scarcity multiplier of five and cites in support *Leonard v. Stemtech Int'l Inc*, 834 F.3d 376 (3d Cir. 2016) and *Reiffer v. Legendary Journeys, Inc.*, 2019 WL 2029973 (M.D. Fla. Apr. 10, 2019), *report and recommendation adopted*, 2019

---

[3] Plaintiff identified Equity's infringement on April 6, 2016. ECF No. 1-4 at 3. At some point between January 2, 2018 and August 11, 2018, Equity removed the Copyrighted Work from its website. Declaration of Jonah A. Grossbardt ("Grossbardt Decl.") ¶ 22

16

WL 2029829 (M.D. Fla. May 2, 2019). However, both cases are distinguishable in significant respects. In *Leonard*, the plaintiff's photograph depicted stem cell images which were notably rare at the time of their publication in the 1990s. *Leonard*, 834 F.3d at 385. The *Leonard* plaintiff's expert witness stated that the scarcity multiplier was warranted given this scarcity and rarity of stem cell images and recommended a multiplier between three to five. *See id*. In *Reiffer*, the plaintiff explained that the scarcity multiplier that he charged to a client depended on a number of factors, including that the photograph would be impossible to recreate since the rooftop where it was taken from was no longer accessible. The *Reiffer* plaintiff additionally explained that the scarcity multiplier was warranted since had previously turned down an offer to license his photograph since he was not prepared to lower his licensing fee, which would have posed a risk value to his photograph's scarcity. Here, Plaintiff has explained that he employed significant technical skills to create the Copyrighted Work, including monitoring the environment with regard to atmospheric conditions, location scouting, and the use of advanced photo exposure control and post-production software. However, Plaintiff has failed to show that the employment of these technical skills is sufficient to merit the application of a scarcity multiplier of five.

### C. Statutory Damages

In the alternative, Plaintiff seeks the maximum amount of statutory damages of $150,000.

A plaintiff may elect to recover an award of statutory damages. *See* 17 U.S.C. 504(c)(1). A court, in its discretion, can award not less than $750 but not more than $30,000 per copyright infringed. Enhanced damages of up to $150,000 per copyright infringed may be granted on a finding of willful infringement. Allegations of willful infringement are deemed to be true on default. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Here, Plaintiff seeks enhanced statutory damages statutory damages due to the "willful nature" of Equity's infringement based on Equity's failure to appear and properly defend itself against Plaintiff's claims. ECF No. 72-1 at 22. Equity was notified of the infringement and refused to pay for the use of the Copyrighted Work before the Plaintiff filed the action. Even though Equity's conduct was willful, the Court finds that the request for $150,000 is excessive, particularly given the amount that Plaintiff would have otherwise charged for its license fee.

Given the willful nature of the violation, the Court finds that $30,000 in statutory damages, plus an added enhancement of $45,000, is merited for the infringement of the Copyright Work.

### D. Fees and Costs

Plaintiff seeks recovery of attorney's fees and costs in the amount of $23,661.72 plus post-judgment interest.

The Copyright Act permits a discretionary award of attorneys' fees to the prevailing party in a copyright lawsuit. *See* 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) (noting § 505 "clearly connotes discretion" and a district court may not "award[ ] attorney's fees as a matter of course"). The award of attorney's fees is merited when the conduct of the infringer is "patently unreasonable, and an award of attorney's fees would further the goal of deterrence." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1074 (C.D. Cal. 2004). In determining whether to award attorney's fees, courts "give substantial weight to the objective reasonableness of the losing party's position," and also consider other factors, including "frivolousness, motivation . . . and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1983, 195 L. Ed. 2d 368 (2016). Default judgments "almost invariably give rise to fee awards." *Id.* at 1988 n.3. "When calculating the amount of attorney fees to be awarded

in a litigation, the district court applies the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015).

Here, Plaintiff has submitted the number of hours expended on litigating this action showing the sum of fees totaling at $23,661.72. ECF No. 27-20. Equity's failure to appear also weighs in favor of granting these attorney's fees in order to further goal of deterring counsel from failing to appear in court in future actions. Accordingly, the Court awards Plaintiff the attorney's fees and costs of $23,661.72 plus the post-judgment interested calculated from the date of this Order.

### E. Summary

In sum, the Court **GRANTS** Plaintiff's request for permanent injunctive relief and further **GRANTS** Plaintiff an award of $75,000 in statutory damages, and $23,661.72 in attorney's fees and costs plus post-judgment interest calculated from the date of this Order.

### CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Plaintiff's Motion for Default Judgment and further **GRANTS** Plaintiff's request for relief in the amounts and forms described above. Plaintiff is directed to submit a proposed order providing injunctive relief on or before January 27, 2020.

**IT IS SO ORDERED.**

Dated: January 13, 2020

Hon. Gonzalo P. Curiel
United States District Judge